MASSACHUSETTS PROPERTY INSURANCE UNDERWRITING
ASSOCIATION *vs.* CHARLES BROOKS WYNN & others.[1]

No. 02-P-1123.

Essex. January 7, 2004. - April 15, 2004.

Present: BECK, GRASSO, & COWIN, JJ.

*Insurance,* Homeowner's insurance, Coverage, Insurer's obligation to defend.
*Motor Vehicle,* All-terrain vehicle.

In an action brought by an insurer seeking a declaration that its insured's
homeowner's insurance policy did not obligate the insurer to defend or
indemnify an action for negligence arising from a collision of all-terrain
vehicles on a beach located in proximity to the insured premises, the judge
properly granted summary judgment in favor of the insurer, where the
language in an exception under the policy to an exclusion from coverage
for motorized land conveyances designed for recreational use off public
roads and owned by an insured and on an insured location was not ambigu-
ous and could not be read to cover accidents occurring in a place other
than the insured location, as long as the vehicle was garaged on the insured
location [827-828]; moreover, the beach, despite being used regularly in
connection with the nearby residence, could not be considered part of the
insured location, where the beach did not adjoin the insured property and
was not owned by the homeowner, and thus was not integral to the use of
the insured property as a residence [828-830].

CIVIL ACTION commenced in the Superior Court Department on
September 4, 2001.

The case was heard by *Nancy S. Merrick,* J., on a motion for
summary judgment.

*Ryan P. Gilday* for Charles Brooks Wynn.

*Richard F. Wholley* for the plaintiff.

GRASSO, J. Early in the evening of December 10, 2000, ·James
Spina and Charles Brooks Wynn were operating all-terrain
vehicles (ATVs) around the beach at Rock Pond in Georgetown.
The vehicles collided, causing personal injury to Wynn. The ac-

[1]James Spina, James Power, and Peyton Power.

cident occurred in proximity to 83 Lakeshore Drive where Spina resided with his wife, Peyton Power. Wynn commenced an action alleging negligence by Spina and negligent entrustment by Power and her father, James Power, the coowners of 83 Lakeshore Drive.

At the time of the accident, a homeowner's insurance policy issued to Peyton Power by Massachusetts Property Insurance Underwriting Association (insurer) covered the Lakeshore Drive premises, where Spina garaged his ATV. The insurer agreed to defend Spina and the Powers against Wynn's claims under a reservation of rights. The insurer then commenced an action seeking a declaration that the homeowner's policy did not obligate it to defend or indemnify the action brought by Wynn.

A judge of the Superior Court denied Wynn's motion for summary judgment and granted summary judgment in favor of the insurer, declaring that the homeowner's policy did not afford defense or indemnity coverage. Wynn now appeals.

The issue before us is narrow. Does the homeowner's insurance policy provide liability and medical coverage for personal injuries allegedly sustained by Wynn in the collision with Spina's vehicle, where Spina is a member of the insured's household, his ATV is garaged on the insured premises, and the collision occurred not on 83 Lakeshore Drive, but at a nearby beach that was regularly used by the insured?[2] Resolution of this question depends, ultimately, on the meaning of the language "[o]wned by an 'insured' and on an 'insured location' " in an *exception* to an *exclusion* from coverage in the policy. We conclude that the judge did not err in declaring that the policy did not require the insurer to defend and indemnify against Wynn's claims.

1. *The homeowner's policy.* To understand what the homeowner's policy covers, excludes, and excepts from exclusion requires a brief primer on policy provisions. Section II of the

---

[2]The beach is the property of Rock Pond Association (association), whose membership is comprised of approximately 242 homeowners who share rights to the beach and pond. The record is unclear as to the requirements for membership and the holder of the title to the association's property. Nor does the record indicate whether the association has liability coverage on its property.

policy sets forth "Liability Coverages," including "Personal Liability" (Coverage E) and "Medical Payments to Others" (Coverage F) (liability coverages). The liability coverages are subject to various "Exclusions" and, in turn, to various exceptions to the exclusions. Whether the policy provides the liability coverages here depends on the applicability of an exception to an exclusion from coverage. In layman's terms, if the exception to the exclusion applies, there is coverage. If not, then there is no coverage. Wynn has the burden of proving the applicability of the exception to the exclusion. See *Highlands Ins. Co.* v. *Aerovox Inc.*, 424 Mass. 226, 230-231 (1997) (insured bears burden of proving loss within description of covered risks).

Pertinent to this case is an exclusion from the liability coverages for accidents arising out of the use of motor vehicles or motorized land conveyances.[3] Excepted from this exclusion is the following:

"This exclusion does not apply to:

". . .

"(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

"(a) Not owned by an 'insured'; or

"(b) Owned by an 'insured' and on an 'insured location.' "

For purposes of summary judgment, the parties do not dispute that, as a spouse and resident member of Peyton Power's household, Spina is an "insured" within the meaning of the policy. The parties also do not dispute that the ATV in question is not a "motor vehicle" but "[a] motorized land conveyance designed for recreational use off public roads, not subject to

---

[3]Exclusion 1 of the homeowner's policy provides, in pertinent part, that the liability coverages do not apply to bodily injury or property damage:

"f. Arising out of:

"(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances . . ."

motor vehicle registration." See *MacLean* v. *Hingham Mut. Fire Ins. Co.*, 51 Mass. App. Ct. 870, 872-873 (2001). Lastly, the parties do not dispute that the ATV was owned by Spina. Accordingly, resolution of whether the liability coverages apply turns on the meaning of the term "on an 'insured location'."

2. *"On an 'insured location.'* " Wynn maintains that the exception language "[o]wned by an 'insured' and on an 'insured location' " is ambiguous and must be interpreted in the way most favorable to the insured. See *Citation Ins. Co.* v. *Gomez*, 426 Mass. 379, 381 (1998); *MacLean* v. *Hingham Mut. Fire Ins. Co.*, 51 Mass. App. Ct., at 874-875 nn.4,5. He contends that such language may reasonably be interpreted to mean that the recreational vehicle owned by the insured need only be *garaged* on the insured location. Under this view, the liability coverages would apply regardless of where the accident occurs, so long as the ATV was owned by the insured and garaged on the insured premises. We disagree.

While reading and understanding an insurance policy's provisions as to coverages, exclusions, and exceptions is often a formidable task, difficulty in comprehension does not equate with ambiguity. Nor is ambiguity created "simply because a controversy exists between the parties, each favoring an interpretation contrary to the other." *Citation Ins. Co.* v. *Gomez*, 426 Mass. at 381, quoting from *Lumbermens Mut. Cas. Co.* v. *Offices Unlimited, Inc.*, 419 Mass. 462, 466 (1995). Contrary to holdings in *Meister* v. *Utica Mut. Ins. Co.*, 573 So. 2d 128, 130 (Fla. Dist. Ct. App. 1991), and *United Servs. Auto. Assn.* v. *Vogel*, 733 So. 2d 401, 404 (Ala. Civ. App. 1998), cited by Wynn, we discern no ambiguity in the policy. The reasonable interpretation of the exception simply is not in accordance with Wynn's construction.

The court's focus should be on determining the intent of the parties by examining the language of the policy, read as a whole. See *King* v. *Prudential Ins. Co. of America*, 359 Mass. 46, 50 (1971). The objective is to "construe the contract as a whole, in a reasonable and practical way, consistent with its language, background, and purpose." *Gross* v. *Prudential Ins. Co. of*

*America,* 48 Mass. App. Ct. 115, 119 (1999), quoting from *USM Corp.* v. *Arthur D. Little Sys., Inc.,* 28 Mass. App. Ct. 108, 116 (1989). Here, an integrated reading of the liability coverages, exclusions, and exceptions manifests an intent to exclude ordinary motor vehicles and motorized land conveyances from liability coverage *entirely*[4] except for a limited type of motorized land conveyance (such as the ATV here) and only when (1) the ATV is *not* owned by the insured; or (2) the ATV is owned by the insured and the accident *occurs* on an insured location. An objectively reasonable insured reading the policy language would not expect to be covered. See *Hingham Mut. Fire Ins. Co.* v. *Niagara Fire Ins. Co.,* 46 Mass. App. Ct. 500, 504 (1999).

The rationale for limiting the exception to the general rule of exclusion to such circumstances rests on the common sense understanding that, if a vehicle is owned by the insured, the likelihood and frequency of use, and the risk of accident, is greater.[5] The intent of the exception is to require an insured under a homeowner's policy to obtain specific liability insurance for all motor vehicles and for all owned recreational vehicles, except for the limited circumstance when an ATV owned by the insured is involved in an accident on the insured location, a confined area of risk. See *Allstate Ins. Co.* v. *Shofner,* 573 So. 2d 47, 50 (Fla. Dist. Ct. App. 1990). In sum, the term "owned by an 'insured' and on an 'insured location' " in the exception to the motor vehicle exclusion requires that the accident *occur* on an "insured location," not that the involved vehicle merely be garaged there.

3. *The Wynn accident.* Wynn contends that, even if the policy requires the accident to have occurred "on an 'insured location,' " the accident here *did* occur "on an 'insured location.' " The policy defines "insured location" as:

---

[4]See *Merrimack Mut. Fire Ins. Co.* v. *Sampson,* 28 Mass. App. Ct. 353, 358 (1990) (automobile exclusion in homeowners' policy obviously intended to omit from homeowners' policy coverage obtainable under automobile insurance policy).

[5]If the ATV is not owned by an insured, it is unlikely that the insured will use it with any great frequency, either on or off the "insured location." Moreover, in such circumstances it is unlikely that the insured would obtain other liability insurance.

"a. The 'residence premises';

"b. The part of other premises, other structures and grounds used . . . as a residence . . . ; [and]

"c. Any premises *used . . . in connection with a premises in 4.a and 4.b above*" (emphasis added).

For purposes of the summary judgment record, we adopt the view of the facts most favorable to Wynn and assume that the accident occurred on the beach rather than on the neighboring pond.[6] See *Coveney* v. *President & Trustees of the College of the Holy Cross*, 388 Mass. 16, 17 (1983). It is uncontroverted that the beach does not adjoin the Powers' property, but is some distance away[7] and requires crossing a stream to the property of the Rock Pond Association (association), and then to the beach. Wynn maintains that, since the definition of "insured location" encompasses not only the residence, but also "[a]ny premises used . . . in connection with [the residence premises]," the beach is an "insured location" because it is used regularly in connection with his nearby residence. The insurer maintains that the beach, which is owned by the association and is separated from 83 Lakeshore Drive by a parking lot and a stream, is not part of the "insured premises" even if used regularly by the insured.

We think that Wynn's proffered interpretation proves too much and, if adopted, would render the definition of "insured location" meaningless and provide no discernible geographical limit to coverage. The term "insured location" and its accompanying reference to "[a]ny premises used . . . in connection with" the residence premises is circumscribed by an obvious and necessary geographic limitation. The definition is not meant to encompass adjacent, nonowned land on which an ATV might be used any more than it is intended to include parks or

---

[6]We disregard disputed issues of fact as to the location of the accident. The affidavit of Donald Cudmore, an investigating police officer, opines that based on physical evidence, including oil or gas stains and extensive gouging and scraping of the ice, the impact occurred in the middle of the frozen pond rather than on the beach. Wynn does not argue that the pond is "an insured location" within the meaning of the policy.

[7]In the light most favorable to Wynn, the beach is less than 500 feet from Spina's residence.

recreational facilities in proximity to the residence that the insured may enjoy and use regularly. Such locations are neither intended nor reasonably understood to be "insured locations" under a homeowner's policy.[8]

It is not reasonable that the meaning of the language "used in connection with [the residence]," and hence the ambit of the "insured location," should vary depending on the fortuity of an insured's regular use of a field, trail, or recreational area, public or private, in the neighborhood of his residence. See *Allstate Ins. Co.* v. *Shofner*, 573 So. 2d at 48, 49-50 (operation of vehicle on public street one block away from residence constitutes "being used away from an insured premises"); *Allstate Ins. Co.* v. *Gutenkauf*, 103 Ill. App. 3d 889, 892-893 (1981) (declining, as arbitrary and not susceptible to limitation, construction of "insured premises" to include area of lake ten to fifteen feet from shore); *Illinois Farmers Ins. Co.* v. *Coppa*, 494 N.W.2d 503, 506 (Minn. Ct. App. 1993). Such a construction would require knowledge by an insurer of not only the insured's property but also of neighboring property and the insured's hobbies and interests. Rather, the term "insured location" is intended and appropriately understood to be limited to the residence and premises integral to its use as a residence.[9] The beach is not integral to the use of 83 Lakeshore Drive as a residence. Accordingly, we affirm the entry of summary judgment for the insurer.

*Judgment affirmed.*

---

[8]Wynn presented no evidence that, under the deed to 83 Lakeshore Drive, the Powers hold property or easement rights in the beach.

[9]We express no opinion whether a particular location, such as an offsite pathway or approach to the residence, is so integral to the use of the residence as to be an "insured location."